COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| MANUEL TORRES, | | No. 08-12-00096-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Criminal Court No. 4 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20090C07495) |
| | § | |

## O P I N I O N

Manuel Torres appeals his conviction of assault family violence. A jury found Appellant guilty and the jury/court assessed Appellant's punishment at confinement in the county jail for 360 days, probated for twenty months, and a fine of $250, a portion of which was probated. We reverse and remand for a new trial.

## FACTUAL SUMMARY

In 2009, Azucena Batres, the complainant, lived with Appellant, her son, and his daughter Juliana Torres. On March 4, 2009 at approximately 9:30 p.m., Batres was upstairs with her six-year-old son and Appellant was downstairs. Appellant became angry because Batres had not answered his calls to her cell phone and he asked to see her phone. Batres gave her flip-style phone to Appellant and he broke it in half. Batres went downstairs and asked Appellant why he had broken her phone. Appellant became angrier and pushed Batres, who was pregnant, onto a

bed and grabbed her by the neck and hair. Batres' son came downstairs and told Appellant to stop, but Appellant told him not to interfere. Appellant continued to hold Batres' down by placing his hand on her neck which caused her pain. Appellant eventually stopped assaulting Batres and left the house. After waiting a few minutes to make sure Appellant was not going to return, Batres called the police. On cross-examination, Batres denied that she had slapped Appellant because he would not eat what she had prepared for dinner or that she had fabricated the assault allegation in order to get residency status in the United States.

Liliana Medina, a Horizon police officer, was dispatched to the residence and met with Batres who was crying, and appeared to be afraid and distraught. Batres told Medina that Appellant had become upset and they argued because she did not answer his phone call. Batres explained to Appellant she had not received a call from him, but Appellant did not believe her, and he grabbed her, threw her on the bed, and choked her. Medina observed that Batres had redness and bruising on her neck and scratches on her forearm. The police took Batres to a women's shelter where she lived for over a year. The State introduced into evidence a recording of the 911 call and photographs taken by Officer Medina depicting Batres's injuries.

Appellant's daughter, Juliana Torres, testified about the argument between Appellant and Batres on March 4, 2009. Batres became upset that evening because Appellant came home a little later than usual and he would not eat what she fixed for dinner. After cooking his own dinner, Appellant later went into the bedroom and Batres followed him. During the ensuing argument, Juliana heard Batres tell Appellant, "Hit me" in Spanish as though she wanted to provoke Appellant. Appellant came out of the bedroom and he left the house with Juliana.

Batres did not have any injuries when Juliana left the house with Appellant that evening. Juliana returned to the house about an hour and a half later and the police were there. Juliana did not recall whether she told the police that Appellant had not hit Batres or that Batres had asked him to hit her.

Appellant testified that he and Batres had previously argued about whether he would help her get citizenship papers. On the evening in question, she became upset when he would not eat what she had fixed for dinner. Appellant walked away but Batres followed him to the bedroom and slapped him. He extended his arms and pushed her away in an effort to keep her away from him, but he denied grabbing her by the hair, neck, or arm. Batres tried to provoke Appellant by telling him "Hit me" in Spanish. Appellant walked out of the bedroom and Juliana said, "Let's get out of here." Batres did not have any injuries when he left the house.

## CHARGE ERROR

In his sole issue, Appellant argues that the trial court failed to properly charge the jury on self-defense because the application paragraph placed the burden on him to prove the defense by a preponderance of the evidence even though self-defense is not an affirmative defense.

### *Standard of Review*

Appellate review of alleged jury charge error generally involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Abdnor*, 871 S.W.2d at 732. When determining whether the charge

is erroneous, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App. 1995); *Miramontes v. State*, 225 S.W.3d 132, 145 (Tex.App.--El Paso 2005, no pet.).

If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second step, the degree of harm necessary for reversal usually depends on whether the appellant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). If the appellant objected to the charge, we determine whether there is "some harm." *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009). If the appellant did not object, as in this case, we will not reverse unless the record demonstrates "egregious harm." *Id.* at 26.

### *Law Applicable to Self-Defense*

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other person's use or attempted use of unlawful force. TEX.PENAL CODE ANN. § 9.31(a)(West 2011). When The initial burden to produce evidence supporting a claim of self-defense is on the defendant. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App. 2003). Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App. 1991). This burden of persuasion does not require that the State produce evidence directly refuting the claim of self-defense, but it does require that the State prove its case beyond a reasonable doubt. *Id*. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject

any defensive evidence on the issue. *Id*. at 913-14. A jury's verdict of guilt is an implicit rejection of the defendant's self-defense theory. *Id*. at 914.

*The Charge*

The trial court's charge included the standard instructions on the presumption of innocence and the burden of proof beyond a reasonable doubt. More specifically, the charge instructed the jury that: "The burden of proof in all criminal cases rests upon the State throughout the trial." Additionally, the jury was instructed that:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a Defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the Defendant.

> The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the Defendant.

> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt.

> In the event you have reasonable doubt as to the Defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict 'not guilty.'

Appellant's argument is based on the highlighted portion of the application paragraph related to self-defense:

> Now, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the Defendant MANUEL TORRES, in the County of El Paso, State of Texas, on or about the 4th day of March, 2009, did then and there use force on Azucena Batres, if he did commit

the offense of assault as alleged in the information, *but you further find by a preponderance of the evidence that the Defendant reasonably believed, from his standpoint, that such force when and to the degree was (sic) used, was immediately necessary to protect himself against the use or attempted use of unlawful force by the complainant,* and that the use of force, if any, by the Defendant was not in response to verbal provocation alone, then you will acquit the Defendant and say by your verdict 'not guilty.'[1] [Emphasis added].

Under Section 2.03(d) of the Penal Code, when a defense, such as self-defense, is submitted to the jury, the trial court is required to instruct the jury that a reasonable doubt on the issue requires that the defendant be acquitted. TEX.PENAL CODE ANN. § 2.03(d)(West 2011); *Luck v. State*, 588 S.W.2d 371, 375 (Tex.Crim.App. 1979)(op. on reh'g). Section 2.04(d), addresses the burden of proof for affirmative defenses and provides: "If the issue of the existence of an affirmative defense is submitted to the jury, the court shall charge that the defendant must prove the affirmative defense by a preponderance of the evidence." TEX.PENAL CODE ANN. § 2.04(d) (West 2011).

The application paragraph is erroneous because it incorporates Section 2.04's "preponderance of the evidence" burden of proof even though self-defense is not an affirmative defense. Self-defense is a defense under Section 2.03. *Saxton v. State*, 804 S.W.2d 910, 912 n.5 (Tex.Crim.App. 1991). The application paragraph instructed the jury to acquit if they found self-defense had been proven by a preponderance of the evidence. While the charge does not explicitly place this burden of proof on Appellant, the only logical interpretation is that it was Appellant's burden.

As noted by the State, the application paragraph must be considered together with other

---

[1] The charge also defined "preponderance of the evidence" as "the greater weight and degree of the credible testimony and evidence admitted before you in this case."

instructions contained in the charge before it can be determined that there is error in the charge. Before reviewing the specific instructions discussed in the State's brief, we observe that the application paragraph fails to instruct the jury as required by Section 2.03(d) to acquit Appellant if they have a reasonable doubt whether he acted in self-defense. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex.Crim.App. 1998)(observing that the court of appeals "properly concluded that the failure to apply the law of self-defense to the facts of the case and to instruct the jury to acquit if they held a reasonable doubt on self-defense was error"); *Russell v. State*, 834 S.W.2d 79, 82 (Tex.App.--Dallas 1992, pet. ref'd)(finding charge error where application paragraph failed to instruct the jury to acquit the defendant if they had a reasonable doubt on self-defense). Appellant has not raised this particular error in an issue on appeal, but we cannot ignore the impact of this error in the application paragraph on the claimed error since it directly relates to self-defense.

The charge instructed the jury that Appellant was presumed innocent and he was not required to produce any evidence at all. Appellant testified and presented other evidence that he acted in self-defense and the jury would necessarily look to the charge for instructions on how to evaluate the defensive evidence. The application paragraph erroneously instructed the jury to acquit Appellant if self-defense had been proven by a preponderance of the evidence and it failed to instruct the jury to acquit if they had a reasonable doubt whether Appellant acted in self-defense. The charge also made clear that the State had the burden to prove each element of the offense beyond a reasonable doubt, the burden remained on the State throughout the trial, and the jury was required to acquit Appellant if the State failed to prove his guilt beyond a reasonable

doubt. These general instructions regarding the State's burden of proof with respect to the elements of the offense do not offset the erroneous instruction related to self-defense in the application paragraph.

The State also directs our review to an instruction in the charge which required the jury to acquit Appellant if they had a reasonable doubt as to Appellant's guilt after considering all of the evidence and the instructions contained in the charge. This instruction directly conflicts with the application paragraph which informs the jury that they should acquit if self-defense had been proven by a preponderance of the evidence. We conclude that the jury charge, when read as a whole, impermissibly shifted the burden of proof to Appellant to prove he acted in self-defense.

*Egregious Harm*

The remaining question is whether the record demonstrates harm sufficient to require reversal. An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011). For actual harm to be established, the error must affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Cosio*, 353 S.W.3d at 777; *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex.Crim.App. 2005). The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171.

As discussed above, the charge, when read as a whole, shifted the burden to Appellant to prove he acted in self-defense. The State argues that the charge error is harmless because the

jury could have reasonably determined that Appellant's self-defense claim was not credible since he denied causing her injuries. The information alleged that Appellant assaulted Batres by squeezing her neck with his hands, grabbing her by the arm, and pulling her hair. Batres testified Appellant grabbed her by the neck and the jury had before it photographs depicting scratches on Batres's arms and redness on her neck. Appellant presented two defensive theories at trial: self-defense and fabrication. With regard to self-defense, Appellant denied grabbing Batres by the hair, throat, or arm, but he testified that she slapped him and he extended his arms and pushed her away in an effort to defend himself. Appellant expressly denied causing any of Batres' injuries and both Appellant and his daughter insisted Batres did not have any of these injuries when they left the house. Appellant also presented a defensive theory that Batres fabricated the story about Appellant grabbing her by the neck and she self-inflicted her injuries so she could get residency status. Ordinarily, a defendant's denial that he caused the complainant's injuries would be fatal to a claim of self-defense but Appellant admitted to conduct which could have caused some of her injuries. The jury was required to determine the credibility of the witnesses and resolve these conflicts in the evidence in light of the erroneous instruction which required the jury to reject Appellant's claim of self-defense if he failed to prove it by a preponderance of the evidence. Further, the charge did not permit the jury to acquit Appellant if they had a reasonable doubt as to whether he acted in self-defense. Based on the record before us, we conclude that the erroneous application paragraph resulted in egregious harm because it vitally affected a defensive theory. Accordingly, we sustain Issue One, reverse the judgment of the trial court, and remand the cause for a new trial.

September 18, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)